# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IMRAN KHAN | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-1367-S |
| | § | |
| AT&T UMBRELLA BENEFIT PLAN | § | |
| NO. 3 | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment ("Defendant's Motion") [ECF No. 15] and Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 21]. The Court has considered Defendant's Motion, Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Brief") [ECF No. 16], Plaintiff's Motion, Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief") [ECF No. 21-3], Defendant's Summary Judgment Response [ECF No. 22], Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Response Brief") [ECF No. 22-1], the undisputed administrative record, *see* App. vol. 1 [ECF No. 17]; App. vol. 2 [ECF No. 18], and the applicable law. For the following reasons, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

### I. BACKGROUND

Plaintiff Imran Khan worked as a "Customer Service Representative"[1] for AT&T. *Id.* at 18. As part of his employment benefits, Plaintiff was covered under the AT&T Umbrella Benefit Plan No. 3 ("Defendant" or "Plan"), an "employee welfare benefits plan" under the Employee

---

[1] As a "Customer Service Representative", Plaintiff "[a]nswer[ed] customer/client requests or inquiries" and "[p]erformed complex data collection and reporting." App. vol. 2 at 663. This role is classified as "sedentary," with physical requirements limited to "typing; computer use." App. vol. 1 at 6.

1

Retirement Income Security Act of 1974 ("ERISA"). *Id.* at 1162-1212. Defendant offers short- and long-term disability benefits to employees under the following circumstances:

> **Short-Term Disability Benefits:** You are considered Totally Disabled when, because of illness or injury, you are continuously unable to perform your customary job or another available job assigned to you by your Participating Company, with the same full-time or part-time classification for which you are reasonably qualified. If you can do your job or another available job for some part of the time, you are not considered Totally Disabled. You are considered Partially Disabled when, because of illness or injury, you are unable to perform your customary job or another available job assigned to you by your Participating Company within the same full-time or part-time classification for which you are reasonably qualified and for the same number of hours that you were regularly scheduled to work before your Partial Disability.

*Id.* at 1119.

> **Long-Term Disability Benefits:** In order to be considered for Long-Term Disability Benefits, you must . . . [h]ave received the maximum amount (52 weeks) of Short-Term Disability Benefits under the [Plan].

*Id.* at 1134.

Sedgwick Claims Management Services, Inc. ("Sedgwick") administers claims under the Plan and has "complete discretionary fiduciary responsibility . . . to determine whether a particular Eligible Employee who has filed a claim for benefits is entitled to benefits under the [Plan], to determine whether a claim was properly decided, and to conclusively interpret the terms and provisions of the [Plan]." *Id.* at 1151, 1154.

Plaintiff's last day of work at AT&T was on October 22, 2019. App. vol. 1 at 6. Approximately one week later, he applied for short- and long-term disability benefits. *Id.* at 5-6. According to Plaintiff, he was unable to do his job due to pain associated with his multiple sclerosis, which was diagnosed in 2003. *Id.* at 7; App. vol. 2 at 563. Following his request for disability benefits, Plaintiff was evaluated by his primary care physician, Dr. Maria Biard, on November 5, 2019. Plaintiff complained of back and neck pain that was "aggravated by any

activity." *Id.* at 700. Dr. Biard noted that "[a]pparently" because of pain, Plaintiff is limited in most daily activities, and that the medications he was taking limited his focus and driving. *Id.* at 701. Dr. Biard opined that Plaintiff was incapacitated and that he would remain so for the next "few months." *Id.*

On November 20, 2019, Defendant denied Plaintiff's short-term disability claim because Plaintiff did not submit medical records within the seven-day deadline after applying for benefits. *Id.* 681. Plaintiff appealed that decision on November 26, 2019. App. vol. 1 at 146. He then proceeded to visit doctors and submit medical records to Defendant as he received them.

Plaintiff visited Dr. Biard on December 11, 2019, for a follow-up evaluation. App. vol. 2 at 657. Plaintiff reported difficulty driving because of back and neck pain, as he was unable to sit for long periods of time. *Id.* Dr. Biard administered therapeutic injections to Plaintiff, refilled his pain medication,[2] and referred him to a pain management specialist. *Id.*

Pain management specialist Dr. Stephanie Jones evaluated Plaintiff on December 23, 2019. Plaintiff complained of neck and back pain that was aggravated by prolonged sitting but "improved with moving/activity." *Id.* at 563-64. After administering a physical examination, Dr. Jones observed pain and palpitation in Plaintiff's cervical and mid-lumbar spine. *Id.* at 565-66. She stated that there was no limitation in Plaintiff's ability to flex, extend, or rotate his neck, and only slight limitation in his ability to extend his lower back. *Id.* The strength of Plaintiff's bilateral upper and lower extremities were rated "5/5." *Id.* An x-ray of Plaintiff's cervical spine revealed no acute abnormality, fractures, or dislocations, and his alignment was "maintained." *Id.* at 555. An x-ray of Plaintiff's lumbar spine revealed "[g]ood alignment" with joints appearing normal. *Id.* at 580.

---

[2] Dr. Biard noted that she had a "lengthy talk about limiting [Plaintiff's] use of narcotics" and that she would "no longer be writing his meds." *Id.* at 658.

3

In an undated affidavit, Dr. Biard stated that "[Plaintiff]'s subjective complaints are not consistent with his diagnosed conditions. He has seen several doctors (ortho and neurology) and severity of pain does not equal physical findings. But we feel his multiple sclerosis is a big contributing factor in his severity of pain. He indeed has the above symptoms but his multiple sclerosis makes everything much more worse." *Id.* at 214. According to Dr. Biard, Plaintiff "is and has been completely and totally disabled from performing his own occupation . . . since he ceased working in October 2019" and "will remain so indefinitely into the future." *Id.* at 215.

Plan physicians Dr. Stephen Broomes[3] and Dr. Howard Grattan[4] reviewed Plaintiff's medical records as they were submitted to Defendant. Dr. Broomes first reviewed Plaintiff's file on January 7, 2020. *See id.* at 146-50. He indicated that Plaintiff's occupation "entails sedentary physical demand." While Dr. Broomes acknowledged Plaintiff's complaints of neck and back pain, he observed that Plaintiff's "physical examination was normal." *Id.* at 147-48. According to Dr. Broomes, "based on the clinical evidence submitted for review, from the perspective of Internal Medicine, [Plaintiff] is capable of any work without restrictions" and "is not disabled from his regular job duties." *Id.* at 147-48. The next day, Dr. Grattan conducted his first review of Plaintiff's file and reached the same conclusion. Dr. Grattan opined that "[f]rom a physical medicine and rehabilitation/pain medicine perspective, [Plaintiff] is not disabled from his regular job duties." *Id.* at 163. He further found that "there are not enough significant clinical findings to support restricted work or an inability to work" and "no evidence of impingement." *Id.* at 164.

On January 16, 2020, Plaintiff returned to Dr. Biard for evaluation. Dr. Biard prescribed Plaintiff medication for his diabetes, hypertension, and pain. *Id.* at 250-51. Plaintiff saw Dr. Biard again approximately one week later regarding back and neck pain. *Id.* at 245. Plaintiff reported

---

[3] Dr. Broomes is Board Certified in Internal Medicine. *Id.* at 150.
[4] Dr. Grattan is Board Certified in Physical Medicine and Rehabilitation as well as Pain Medicine. *Id.* at 165.

4

that his upper back was "doing well," and most of his pain was in his neck. *Id.* During that visit, Dr. Biard "talked extensively [with Plaintiff] about his pain and severity of pain and the fact that imaging and specialists are not finding much pathology to correlate to his severity of pain." *Id.* Dr. Biard believed this "must be due to [Plaintiff's] multiple sclerosis." *Id.* Dr. Biard also spoke about her continuing concerns of Plaintiff's life-long use of narcotics. *Id.* An MRI of Plaintiff's lumbar spine revealed no significant findings. *Id.* at 264-65. Dr. Broomes and Dr. Grattan reviewed these additional medical records and stated that their previous determinations remained unchanged. *Id.* at 153 ("[T]here were no additional records pertaining to any medical condition that would support a severe functional limitation that would preclude [Plaintiff] from working during the review period."); *id.* at 167 ("[T]here are not enough findings to indicate [that Plaintiff] would be functionally impaired.").

Plaintiff had a follow-up visit with Dr. Jones the next month and complained of pain in his middle back. Plaintiff's thoracic spine was x-rayed. *Id.* at 259-63. The x-ray showed minimal curvature and minimal degenerative disc disease. *Id.* at 263. Shortly after, Plaintiff was evaluated again by Dr. Biard and complained of moderate upper back and neck pain. *Id.* at 238. He was prescribed oral medication and treated with therapeutic injections. *Id.* at 238-39. Plaintiff was found to be sleeping and eating well. *Id.* A subsequent x-ray of Plaintiff's thoracic spine revealed no significant findings. *Id.* at 281-82. Following the x-ray, Plaintiff visited a chiropractor and complained of neck and back pain. *Id.* at 436. In his report, the chiropractor indicated that there were "several areas of improper spinal mobility" and that "[e]ach region of the spine ha[d] some damage that compromise[d] its integrity." *Id.* Plaintiff was recommended an at-home exercise program to work on improving spinal stability. *Id.* While Plaintiff was advised to not run or lift

anything above 25 pounds, the chiropractor wrote that "[w]ith consistent treatment and adequate rest, the patient's prognosis for return to full functional capacity is good." *Id.*

In his review of the additional medical records, Dr. Broomes's original opinion remained unchanged: "There was no evidence of a limited range of motion, decreased strength, or poor mobility. There was no evidence of significant physical, focal, or cognitive deficits as well. Although [Plaintiff] reported pain, there was no clinical evidence to support inability to perform sedentary physical demands as required by his job." *Id.* at 155. Similarly, Dr. Grattan's original opinion was not changed by the additional medical records. *Id.* at 171. According to Dr. Grattan, "[t]here are no new findings such as sensory deficits or motor weakness that would completely preclude [Plaintiff]'s ability to function. Therefore, it is felt he would be capable of answering customer/client requests or inquiries and performing complex data collection as required by his occupation." *Id.* As to the chiropractor's recommended restrictions, Dr. Grattan observed that "[t]hese restrictions . . . would be appropriate based on the overall MRI findings and are within the parameters of [Plaintiff]'s job description." As such, Dr. Grattan found that Plaintiff "would not be precluded from his own occupation." *Id.*

On May 18, 2020, Plan physician Dr. Jason Marchetti[5] reviewed Plaintiff's medical records and conducted a physical examination of Plaintiff. *Id.* at 353-54. Dr. Marchetti noted that while Plaintiff "has subjective complaints of pain reportedly causing functional limitations," "[o]bjectively, he does not have any neurological deficits or significant specific findings to corroborate significant disability or impairment." *Id.* at 358. In Dr. Marchetti's opinion, Plaintiff "is capable of sitting for at least one hour at a time before taking a short stretch break and can sit with this regiment throughout an eight-hour workday. He is capable of lifting and carrying 25

---

[5] Dr. Marchetti is Board Certified in Physical Medicine and Rehabilitation. *Id.* at 359.

6

pounds on occasion at waist height, 15 pounds from the floor, but less than 10 pounds from overhead. All of this is within the job description listed for [Plaintiff]'s position." *Id.*

Defendant denied Plaintiff's long-term disability claim on July 7, 2020, because Plaintiff had not received 52-weeks' worth of short-term disability benefits, as required by the terms of the Plan. App. vol. 2 at 1040; *see also id.* at 1134 (Plan provision requiring 52 weeks of short-term disability benefits in order to qualify for long-term disability benefits). Plaintiff's appeal for long-term disability benefits was denied for the same reason on October 26, 2020. *Id.* at 1019-21.

On November 13, 2020, Defendant denied Plaintiff's appeal for short-term disability benefits after review of Plaintiff's entire medical file. App. vol. 1 at 134-37. Although the medical records reference Plaintiff's subjective pain, Defendant asserted that "none are documented to be so severe as to prevent [Plaintiff] from performing the duties of [his] job . . . with or without reasonable accommodation." *Id.* at 136. Accordingly, Defendant determined that Plaintiff was not disabled under the terms of the Plan. *Id.* at 134.

Nearly six months after Defendant denied Plaintiff's appeal for short-term disability benefits, Plaintiff submitted a letter to Defendant requesting that it reconsider its previous denials. In support, Plaintiff attached the following evidence:

- An affidavit signed by Plaintiff describing his pain and inability to sit for extended periods of time, as well as the medications he takes and the resulting dizziness and inability to focus, App. vol. 2 at 928-29;

- Affidavits signed by Plaintiff's wife, daughter, and son attesting that the information provided in Plaintiff's affidavit is true, *id.* at 930-32;

- A letter from Dr. Biard describing Plaintiff's dizziness resulting from his medications and reiterating her opinion that Plaintiff is permanently disabled from any type of gainful employment, *id.* at 933;

- A statement listing Dr. Biard's recommended restrictions, which include a limit of sitting three hours per day and lifting less than ten pounds, *id.* at 934-36; and

7

- Progress reports following Plaintiff's visits with Dr. Biard, which indicate Plaintiff's complaints of pain and prescriptions refills, *id.* at 937-77.

Defendant acknowledged receipt of Plaintiff's request for reconsideration and the additional evidence. However, it informed Plaintiff that its November 13, 2020, decision denying Plaintiff's appeal for short-term disability benefits was final. *Id.* at 995.

Plaintiff filed this lawsuit on June 11, 2021, alleging that Defendant wrongfully denied him disability benefits in violation of ERISA. *See* Compl. [ECF No. 1]. According to Plaintiff, he "has been since prior to October 17, 2019, remains to date and is expected to remain indefinitely disabled from his own occupation as well as any occupation and entitled to disability benefits under the terms of the Plan due to Multiple Sclerosis, back pain, shoulder pain, complications thereof and required medications." *Id.* at 2.

Plaintiff and Defendant both move for summary judgment based on the administrative record. Plaintiff contends that Defendant abused its discretion in denying his claims for disability benefits by failing to consider his subjective complaints of pain. Pl.'s Br. 24-28. He also claims that Defendant abused its discretion by declining to reconsider his claims in light of the additional evidence that was submitted. *Id.* at 21-24. Defendant maintains that it did not abuse its discretion because it did consider Plaintiff's subjective complaints of pain and substantial evidence in the administrative record supports the denials. Def.'s Br. 8-13. Defendant also argues that it did not abuse its discretion in refusing to consider the additional evidence because those documents were submitted after the final denials were issued. Def.'s Resp. Br. 3-4.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination,

8

courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "conclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. DISCUSSION

A plan participant may sue under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When the plan vests the fiduciary with discretionary authority to determine eligibility for benefits under the plan or to interpret the plan's provisions, an abuse of discretion standard of review applies. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Ellis v. Liberty of Assurance Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004). Here, the Plan gives Sedgwick, as the named fiduciary, "complete discretionary fiduciary responsibility . . . to determine whether a particular Eligible Employee who has filed a claim for benefits is entitled to benefits under the [Plan], to determine whether a claim was properly decided, and to conclusively interpret the terms and provisions of the [Plan]." App. vol. 1 at 1151, 1154. Accordingly, the Court reviews Defendant's decisions for abuse of discretion.

An ERISA plan abuses its discretion when the decision "is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)). If the decision is supported by "substantial evidence and is not arbitrary or capricious, it must prevail." *Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 956 (5th Cir. 2019) (quoting *Ellis*, 394 F.3d at 273). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, 394 F.3d at 279 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). The district court's review of a benefits decision "need not be particularly complex or technical; it need only assure that the . . . decision fall somewhere on a continuum of reasonableness—even if on the low end." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 140 (5th Cir. 2016) (quoting *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 289, 298 (5th Cir. 2007)).

10

### A. *Denial of Benefits*

As a Customer Service Representative at AT&T, Plaintiff was required to answer calls from customers and use a computer. App. vol. 1 at 6; App. vol. 2 at 663. Thus, to qualify for short-term disability benefits under the Plan, Plaintiff had to be "unable to perform" these duties because of injury or illness. App. vol. 1 at 1119. Plaintiff argues that he was unable to do so because of the pain associated with his multiple sclerosis. According to Plaintiff, "[t]he Plan summarily disregard[ed] Plaintiff's complaints without any evidentiary basis in the record." Pl.'s Br. 25, 28.

Contrary to Plaintiff's contention, the Plan's physicians explicitly acknowledged Plaintiff's subjective complaints of pain. However, they unanimously found that the objective medical evidence did not corroborate Plaintiff's reported pain and functional limitations.[6] *See id.* at 148-49, 163, 347. After review of Plaintiff's medical records, Dr. Broomes concluded that "[t]he evidence failed to rise to the level of disability." *Id.* at 159. He further stated that "[t]he clinical evidence does not suffice to preclude the claimant from performing the sedentary demands of his job." *Id.* at 148. Dr. Grattan drew the same conclusion from his review of Plaintiff's medical records. He opined that "[t]here are not enough significant clinical findings to support restricted work or an inability to work," and that Plaintiff "should have the ability to perform his normal occupation." *Id.* at 164. Upon physical examination of Plaintiff and review of his medical records, Dr. Marchetti agreed. Dr. Marchetti stated that Plaintiff is "capable of sitting for at least one hour at a time before taking a short stretch break and can sit with this regiment throughout an eight-hour workday," and "is capable of lifting and carrying 25 pounds on occasion at waist height, 15

---

[6] Plaintiff's primary care physician Dr. Biard similarly stated that "imaging and specialists are not finding much pathology to correlate to his severity of pain." App. vol. 1 at 247.

11

pounds from the floor, but less than 10 pounds overhead." *Id.* "All of this is within [Plaintiff's] job description." *Id.* Similarly, Defendant's final denial of Plaintiff's claim for short-term disability benefits noted that although the medical records reference Plaintiff's subjective pain, "none are documented to be so severe as to prevent [Plaintiff] from performing the duties of [his] job . . . with or without reasonable accommodation." *Id.* at 136.

While it is an abuse of discretion to ignore a claimant's subjective complaints of pain, *see Audino v. Raytheon Co. Short Term Dis. Plan*, 129 F. App'x 882, 885 (5th Cir. 2005), the administrative record here does not support Plaintiff's contention that Defendant did so. Rather, it shows that Defendant considered Plaintiff's complaints of pain and relied on objectively verifiable information in reaching its decision, which was not an abuse of discretion. *See Corry*, 499 F.3d at 399-400. Indeed, the Fifth Circuit has recognized that an insistence on objective evidence of restrictions and limitations is not arbitrary and capricious. *See Dudley v. Sedgwick Claims Mgmt. Servs., Inc.*, 495 F. App'x 470, 478 (5th Cir. 2012).

In light of the extensive evidence indicating that Plaintiff was able to perform his duties as a Customer Service Representative, the Court finds that substantial evidence supports Defendant's determination that Plaintiff was not disabled under the terms of the Plan and therefore did not qualify for short-term disability benefits. Dr. Biard's opinion to the contrary is insufficient to support a finding of an abuse of discretion. "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis*, 394 F.3d at 273 (emphasis in original). Additionally, Defendant is not required to "accord special deference to the opinions of treating physicians," and ERISA does not

"impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).

The Court also finds that Defendant did not abuse its discretion in denying Plaintiff's claim for long-term disability benefits. The clear language of the Plan requires Plaintiff to have "received the maximum amount (52 weeks) of Short-Term Disability Benefits under the [Plan]" in order to be considered for long-term disability benefits. App. vol. 2 at 1134. Because Plaintiff never received short-term disability benefits, he was not entitled to long-term disability benefits.

### B. *Failure to Consider Additional Evidence*

Plaintiff also argues that Defendant abused its discretion by refusing to allow him to supplement the administrative record with additional evidence submitted almost six months after Defendant's final denial letter was issued.

When assessing factual questions in benefits cases, "a long line of Fifth Circuit cases stands for the proposition that . . . the district court is constrained to the evidence before the plan administrator." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (collecting cases), *overruled on other grounds by Metro. Life. Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Before filing suit, "the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it." *Id.* at 300. Such a "fair opportunity" must come in time for the administrator to "reconsider his decision." *Id.*

Here, Plaintiff had exhausted his internal appeals and therefore his file was already closed. *See* App. vol. 1 at 136 (denying short-term disability appeal and stating that Plaintiff "has exhausted all mandatory appeal procedures under the [Plan]."); App. vol. 2 at 1020 (denying long-term disability appeal and stating the same). This late submission of evidence, less than one month

before Plaintiff filed suit, did not give Defendant the "fair opportunity" to reconsider its decision contemplated by *Vega*. *See Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, (5th Cir. 2015) (holding that there was no fair opportunity for the administrator to reconsider its decision where the plaintiff had exhausted the administrative appeals and submitted additional evidence four weeks before filing suit in federal court). The additional evidence that Plaintiff submitted merely repeats his subjective complaints of pain and Dr. Biard's opinion that Plaintiff is disabled. *See* App. vol. 2 at 928-77. This evidence would not have changed the outcome. *See Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 320 (5th Cir. 2007) ("We need not decide this question of *Vega*'s precise requirements today, because we conclude that the documents in dispute do not change the disposition of the case."). The Court therefore finds Defendant's refusal to supplement the administrative record with Plaintiff's additional evidence and reconsider Plaintiff's disability claims was not an abuse of discretion.

## IV.   RULE 52 JOINT MOTION

If necessary, and in the alternative, the Court **GRANTS** the Joint Motion and Stipulation for Court to Treat Parties' Pending Motions for Summary Judgment in this ERISA Benefits Case as Motions for Judgment on Administrative Record Under Rule 52 [ECF No. 25]. Treating Defendant's Motion and Plaintiff's Motion as motions for judgment, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion for the same reasons as set forth above.

V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [ECF No. 15] and **DENIES** Plaintiff's Motion for Summary Judgment [ECF No. 21].

**SO ORDERED.**

SIGNED August 23, 2022.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**